### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **MARY SUZIE HAIRE,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | )   No. 08-CV-336-TCK-FHM |
| | ) |
| **BIOS CORPORATION,** | ) |
| a body corporate, | ) |
| | ) |
| **Defendant.** | ) |

### OPINION AND ORDER

Before the Court is Defendant's Motion for Summary Judgment (Doc. 11).

**I.   Background**

Following are the undisputed facts relevant to this Opinion and Order.  Plaintiff Mary Suzie Haire ("Plaintiff") was employed by Defendant BIOS Corporation ("BIOS") from 2002 until her termination on May 12, 2006.   BIOS provides companionship services to persons with developmental disabilities. Such services include education and training in matters of employment, finance, living skills, safety, citizenship, and recreation.  In addition, BIOS aims to advocate for disabled individuals and educate the general public on the needs of people with developmental disabilities.

Some of the disabled individuals served by BIOS are former residents of Hissom Memorial Center ("Hissom") and are members of a certified class receiving federal funds as a result of litigation involving Hissom ("Hissom Class").  The care of Hissom Class members is supervised by a team consisting of: (1) a case worker assigned by the Oklahoma Department of Human Services ("DHS"), Developmental Disabilities Service Division ("DDSD"); (2) family members or appointed guardians; (3) a Program Manager, who is employed by BIOS and oversees the entire program of

care; (4) a Habilitation Training Specialist ("HTS"), who is employed by BIOS and works directly with the disabled individual in his home; and (5) the DDSD Office of Client Advocacy.

Timothy Sanders ("Sanders") is a member of the Hissom Class that is served by BIOS. Plaintiff served as an HTS in Sander's home during the first two years of her employment and also supervised Sander's care in her subsequent role as Program Manager. On or around May 2006, Plaintiff had concerns regarding the amount of money being distributed to Sanders. Specifically, she was concerned that the amount of "budget" money provided to Sanders was too low. On or around May 2006, Plaintiff informed Patricia Smith ("Smith"), an employee of DHS, that BIOS had cut Sanders' budget "even more" and expressed to Smith that Plaintiff would "really like to move [Sanders'] services to ARC Group Homes." (*See* 5/9/06 Email from Smith to Daniel Comer (restating Plaintiff's conversation with Smith), Ex. 3 to Mot. for Summ. J., at 1.) ARC Group Homes ("ARC") is a competitor of BIOS that provides services to individuals with developmental disabilities. During this time period, Plaintiff's husband was employed by ARC. On May 12, 2006, Plaintiff was terminated for "[i]nsubordination" and for failing to "follow her chain of command." (*See* 5/12/06 Action Agreement executed by Plaintiff and Juanita Williams, Ex. 3 to Mot. for Summ J., at 4.)

On or around January 9, 2007, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that she had been discriminated against because of her "association with a disabled person in violation of the Americans with Disabilities Act of 1990, as amended." (Charge of Discrimination, Ex. 3 to Mot. for Summ. J., at 17.) On or around July 2007, the EEOC investigated whether Plaintiff's termination was in violation of the Americans With Disabilities Act ("ADA"). (*See* Corr. between EEOC and BIOS, dated 7/12/07 and

7/24/07, Exs. 1 and 2 to Resp. to Mot. for Summ. J.) On February 28, 2008, Plaintiff received a right to sue letter ("Right to Sue Letter") from the EEOC. On May 12, 2008, Plaintiff filed her Petition for Wrongful Discharge in the District Court for Washington County ("Petition"). The Petition asserts a cause of action for wrongful discharge in violation of the Oklahoma Protective Services for the Elderly and for Incapacitated Adults, Okla. Stat. tit. 43A, § 10-101, *et seq.*, and in violation of Oklahoma public policy ("State Law Claims"). The Petition also states that "Plaintiff has been issued a Right to Sue Letter by the EEOC," and such letter is attached to the Petition as Exhibit A.[1] On June 5, 2008, BIOS removed the case to federal court based on federal question jurisdiction created by the ADA claim. BIOS has moved for summary judgment on all claims.

## II.     Summary Judgment Standard

A motion for summary judgment is properly granted "if there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). In applying this standard, the Court must view the evidence and draw all inferences in a light most favorable to the party opposing summary judgment, but that party must identify sufficient evidence which would require submission of the case to a jury. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-52 (1986); *Mares v. ConAgra Poultry Co.,* 971 F.2d 492, 494 (10th Cir. 1992). Where the non-moving party will bear the burden of proof at trial on a dispositive issue, that party must go beyond the pleadings and identify specific facts which demonstrate the existence of an issue to be tried by the jury. *See Mares*, 971 F.2d at 494.

---

[1] Neither the Petition itself nor the Right to Sue Letter specifies the federal statute or statutes giving rise to Plaintiff's claims. However, the parties agree that the Petition's reference to and incorporation of the Right to Sue Letter is intended to assert an ADA claim.

### III.     ADA "Association Discrimination" Claim

Plaintiff argues that, in terminating her employment, BIOS discriminated against her based on her relationship or association with Sanders. Title I of the ADA, which governs employment relationships, provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to . . . discharge of employees . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The statutory definition of "discriminate" includes "excluding or otherwise denying equal jobs or benefits to a qualified individual *because of the known disability of an individual with whom the qualified individual is known to have a relationship or association*." 42 U.S.C. § 12112(b)(4) (emphasis added) ("association provision"). Thus, in addition to prohibiting discrimination against a disabled individual, the ADA also prohibits discrimination against an individual who is known to have a "relationship" or "association" with a disabled individual. Generally, the association provision "was intended to protect qualified individuals from adverse job actions based on unfounded stereotypes and assumptions arising from the employees' relationship with particular disabled persons." *Oliveras-Sifre v. P.R. Dep't of Health*, 214 F.3d 23, 26 (1st Cir. 2000).

In order to establish a prima facie case of association discrimination under the ADA, a plaintiff must show the following: "(1) the plaintiff was 'qualified' for the job at the time of the adverse employment action; (2) the plaintiff was subjected to adverse employment action; (3) the plaintiff was known by his employer at the time to have a relative or associate with a disability; (4) the adverse employment action occurred under circumstances raising a reasonable inference that the disability of the relative or associate was a determining factor in the employer's decision." *Den Hartog v. Wasatch Acad.*, 129 F.3d 1076, 1085 (10th Cir. 1997) (first establishing elements of prima

4

facie case); *see also Trujillo v. Pacificorp*, 524 F.3d 1149, 1154 (10th Cir. 2008). In this case, Plaintiff has presented sufficient evidence to survive summary judgment as to the first two elements, as she has submitted evidence that she was qualified for her position and that she was terminated. The Court will address the final two elements in more detail.

        A.        Third Element

As to the third element, Plaintiff must show that BIOS knew, at the time of her termination, that she had "a relative or associate with a disability." *See Den Hartog*, 129 F.3d at 1085. It is not disputed that Sanders is disabled and that BIOS knew of Plaintiff and Sanders' relationship. The question is whether Plaintiff and Sanders had a qualifying "relationship or association," as such terms are used in the statute. According to the Tenth Circuit, "[a] family relationship is the paradigmatic example of a 'relationship' under the association provision of the ADA." *Id.* at 1082. For example, in a recent Tenth Circuit decision, the plaintiffs claimed they were terminated because of healthcare costs associated with their son's illness, and the court found that the plaintiffs' "relationship to their son is protected by the association provision." *Trujillo*, 524 F.3d at 1154; *see also* 12 U.S.C.A. § 12112 (collecting "association discrimination" cases at annotation note 6) (seven of twelve annotations involved close family relationships with disabled person, such as spouse or parent); *see also Saladin v. Turner*, 936 F. Supp. 1571, 1580 (N.D. Okla. 1996) (undersigned found that restaurant was liable for association discrimination under ADA because employer terminated homosexual waiter based on his association with male partner who had AIDS). Plaintiff and Sanders are not relatives and do not have anything resembling a familial or spousal relationship.

The parties did not cite, and the Court did not locate, a definition of "associate" or "association" in the context of the ADA's association discrimination provision. However, in the

*Den Hartog* decision, the Tenth Circuit quoted the following examples set forth in legislative materials that involved an association with someone other than a family member:

> For example, it would be discriminatory for an employer to discriminate against a qualified employee *who did volunteer work for people with AIDS*, if the employer knew of the *employee's relationship or association* with the people with AIDS, and if the employment action was motivated by that relationship or association.
> . . .
> Similarly, it would be illegal for an employer to discriminate against a qualified employee because that employee had a family member *or a friend* who had a disability, if the employer knew about the relationship or association, knew that the friend or family member has a disability, and acted on that basis. Thus, if an employee had a spouse with a disability, and the employer took an adverse action against the employee based on the spouse's disability, this would then constitute discrimination.

*Id.* (quoting H.R. Rep. No. 101-485, pt. 2, at 61-62 (1990), reprinted in 1990 U.S.C.C.A.N. 303, 343-44, and H.R. Rep. No. 101-485, pt. 3, at 38-39 (1990), reprinted in 1990 U.S.C.C.A.N. 445, 461-62) (emphasis added). These examples indicate that the "association" does not have to be a particularly close or familial relationship and that an "association" includes a relationship created by a plaintiff's provision of assistance to a disabled individual. In addition, one district court held that a plaintiff created a question of material fact as to whether a supervisory position that the plaintiff occupied with respect to a subordinate disabled employee created a "relationship or association." *See Braverman v. Penobscot Shoe Co.*, 859 F. Supp. 596, 604 (D. Me. 1994).

In this case, Plaintiff had worked closely with Sanders for several years. She served as his in-home HTS and later supervised his care as his Program Manager. In addition to a working relationship, Plaintiff developed a personal relationship with Sanders. She testified that she was "very close" to Sanders and "cared a lot about him." (Haire Dep., Ex. 1 to Def.'s Mot. for Summ. J., at 34:8-21.) She continued to visit Sanders in his home even after she was terminated from BIOS, and Sanders even spent the night in her home on several occasions following her termination. (*Id.*)

The Court finds that Plaintiff's evidence is sufficient to at least create a question of fact as to whether her relationship with Sanders, which was both personal and professional, is sufficient to satisfy the third element requiring a "relationship or association" with a disabled person.[2]

B.      Fourth Element

In analyzing the "discriminatory motive" element of a prima facie case, a court may begin by considering the general categories of ADA association discrimination cases: (1) "expense" cases – *e.g.*, an employee is fired because his disabled spouse is covered by the company's health plan; (2) "disability by association" cases – *e.g.*, (a) an employee's homosexual companion has HIV, and an employer fears that its employee may also be infected, or (b) an employee's blood relative has a disability that indicates the employee's genetic predisposition for such a disability; and (3) "distraction" cases – *e.g.*, an employee is somewhat inattentive at work because his spouse has a disability that requires his attention. *See Trujillo*, 524 F.3d at 1155 (setting forth general categories as originally outlined in *Larimer v. Int'l Bus. Machs. Corp.*, 370 F.3d 698, 700 (7th Cir. 2004)). A court must then determine, considering the totality of the circumstances, whether the plaintiff "raised the necessary reasonable inference of discriminatory motive to establish a prima facie case of association discrimination." *See Trujillo*, 524 F.3d at 1156 (finding that the plaintiffs had established a prima facie case of association discrimination in the "expense" category where the plaintiffs presented evidence regarding their employer's concerns about the cost of plaintiffs' son's

---

[2] The unique fact presented in this case is that Plaintiff's relationship with the disabled person was created by the very employer that allegedly discriminated against her. As explained below, this and other circumstances surrounding the termination present an insurmountable hurdle as to the fourth element of Plaintiff's prima facie case. However, if the third element is viewed in isolation, a jury could conclude that Plaintiff and Sanders have a "relationship or association" as those terms are used in the ADA.

7

illness and established a temporal proximity between their termination and the relapse of their son's illness).

Plaintiff's evidence does not fit into any of the categories above. Specifically, Plaintiff has not presented any evidence (1) that Plaintiff's relationship with Sanders, simply by virtue of the relationship itself, caused BIOS or was likely to cause BIOS any additional expense, such as an increase in costs of Plaintiff's health-care coverage; (2) that BIOS was fearful that Plaintiff would herself become disabled based on her association with Sanders; or (3) that Plaintiff was somehow distracted or inattentive at work due to her relationship with Sanders. Indeed, it was part of Plaintiff's job duties to associate with Sanders and many other disabled individuals, which belies the notion that Plaintiff's association with a disabled individual was a determining factor in the termination decision. Thus, this case does not present facts that courts have recognized as potentially giving rise to an inference of discriminatory motive.

Nor has Plaintiff provided any authority, argument, or evidence that create an inference of discriminatory motive by BIOS. Construing her evidence in the most favorable light, Plaintiff's theory of association discrimination is that: (1) she was protecting the best interests of Sanders by raising concerns regarding his finances and attempting to prevent financial abuse of Sanders by BIOS; (2) she made a report to DHS regarding her concerns, as required by state law and BIOS' policy manual; and (3) she was terminated for attempting to protect Sanders' interest and complying with relevant laws and policies. Assuming Plaintiff can prove that BIOS terminated her based on this reporting of mismanagement of Sanders' finances (and not based on BIOS' stated reason of "disloyalty" to BIOS), Plaintiff still has not presented a scintilla of evidence that her termination was motivated in any way by Plaintiff's relationship or association with a disabled individual or that her

termination was based on unfounded stereotypes arising from Plaintiff's relationship with a disabled individual. Plaintiff's termination was *related* to Sanders' disability only in that her employment required Plaintiff to work with disabled individuals. By virtue of the employment relationship, every one of BIOS' employees has a "relationship" or "association" with a disabled person. However, this does not mean that every termination by BIOS that involves an employee's dealings with or concerns regarding a disabled client is converted to an ADA association discrimination case. Instead, Plaintiff must create a reasonable inference that her relationship with Sanders was a determining factor in the employment decision, and she has failed to create such an inference. Considering the totality of the circumstances, Plaintiff has not presented any evidence that would create a reasonable inference that BIOS, a provider of services for the disabled, discriminated against Plaintiff based on her relationship with Sanders, a disabled BIOS client.

Because Plaintiff has failed to present a prima facie case of association discrimination, the Court hereby grants judgment to BIOS on this claim.

**IV.    State Law Claims**

The Court has granted judgment to BIOS on the only federal question presented. Accordingly, the Court has discretion to exercise supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(c)(3) or to remand them to the state court where Plaintiff originally asserted the action. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 357 (1988) (holding that, upon dismissal of all federal claims, "a district court has discretion to remand to state court a removed case involving pendent claims upon a proper determination that retaining jurisdiction over the case would be inappropriate"); *see also Burke v. Utah Transit Auth. and Local 382*, 462 F.3d

1253, 1263 n.3 (10th Cir. 2006) (finding that district court properly exercised its discretion to dismiss state law claims after granting summary judgment on federal claims).

In making the determination of whether to retain jurisdiction or remand the case to state court, a court should consider "principles of economy, convenience, fairness, and comity which underlie the pendent jurisdiction doctrine." *Carnegie-Mellon Univ.*, 484 U.S. at 357. "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims." *Id.* at 350 n.7. Relinquishing jurisdiction is also appropriate when "state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought." *Id.* (internal quotation omitted).

The Court finds that this is a "usual" case in which the principles of economy, convenience, fairness, and comity weigh in favor of remand of the remaining claims to state court. In addition, the only remaining claims arise under state law and require interpretation of an Oklahoma statute. Accordingly, the remaining claims will be remanded to state court. *See Gamez v. Country Cottage Care & Rehab.*, 377 F. Supp. 2d 1103, 1128 (D.N.M. 2005) (granting summary judgment to defendant on federal claims, declining to exercise supplemental jurisdiction, and remanding action to state court).

## V. Conclusion

Defendant's Motion for Summary Judgment (Doc. 11) is GRANTED as to Plaintiff's ADA claim, and the Court will enter JUDGMENT as to such claim. The remaining state-law claims are hereby REMANDED to the District Court for Washington County, Oklahoma pursuant to 28 U.S.C. § 1367(c)(3).

**ORDERED THIS 26th DAY OF FEBRUARY, 2009.**

_____
**TERENCE KERN
UNITED STATES DISTRICT JUDGE**